559 S.E.2d 864

**The STATE, Respondent,**

**v.**

**Howard JOHNSON, Appellant.**

**No. 3441.**

Court of Appeals of South Carolina.

Submitted Nov. 14, 2001.

Decided Feb. 4, 2002.

Assistant Appellate Defender Robert M. Pachak, of SC Office of Appellate Defense, of Columbia, for appellant.

Attorney General Charles M. Condon, Chief Deputy Attorney General John W. McIntosh and Assistant Deputy Attorney General Charles H. Richardson, all of Columbia; and Solicitor Harold W. Gowdy, III, of Spartanburg, for respondent.

GOOLSBY, J.

Howard Johnson appeals his conviction for second-degree burglary. We affirm.[1]

On March 2, 2000, Officer H.B. Godfrey, with the Inman Police Department, responded to a burglar alarm at Fast Phil's, a video poker establishment. When Godfrey arrived at the scene, he noticed glass from the front door broken out on the sidewalk in front of the store, indicating someone had tried to exit rather than enter the building. Upon entering the store, Godfrey noticed a ceiling tile in the restroom that had been pushed up where someone could have hidden.

The store manager arrived at the scene about twenty minutes later. After taking a quick look, she noticed that rolled coins, cigarettes, and cigars totaling between $40 and $50 were missing.

Godfrey later watched a security video tape of the premises taken during the time in question and recognized Johnson in the tape. The videotape segment that Godfrey viewed first showed Johnson crawling out from the back of the store after it had closed, scooting across the floor with his jacket over his head, taking items from behind the counter, and finally kicking the front door to leave with coins and cigarettes dropping from his hands. Godfrey then had the store manager rewind the tape so he could view a segment taken a few hours before the store had closed. That segment showed Johnson coming to the register, either to purchase something or to get change, and going back to the poker machines. In both segments of the tape, Johnson was wearing the same clothing. Johnson

---

1. Because oral argument would not aid the court in resolving the issue on appeal, we decide this case without oral argument pursuant to Rule 215, SCACR.

did not work at Fast Phil's and did not have permission to be there after normal business hours. Employees were aware Johnson had been in the store shortly before it closed, but were unable to find him when they were locking up.

Later that morning, Godfrey procured warrants for Johnson's arrest, which were executed on Johnson by Officer Charles Peace of the Inman Police Department and Officer Detrinka, the county warrant officer, at the residence of Johnson's mother. While executing the warrants, Peace noticed a stack of about 40 or 50 phone cards.[2]

Johnson was indicted for second-degree burglary and petit larceny during the November 2000 term of the Spartanburg County Grand Jury. The case proceeded to trial later that month, and the jury found Johnson guilty as charged. In addition to his sentence on the larceny charge, Johnson received a sentence of life imprisonment on the burglary conviction. Johnson appeals only the conviction and sentence for second-degree burglary.

The sole issue in this appeal is whether the State presented sufficient evidence at trial to prove Johnson had entered Fast Phil's without consent. Johnson argues the trial court should have directed a verdict of acquittal on the second-degree burglary charge because the only possible inference from the evidence presented at trial was that he entered the store while it was open to the general public. We disagree.

South Carolina Code section 16–11–312, under which Johnson was charged, provides in pertinent part as follows:

(B) A person is guilty of burglary in the second degree if the person *enters a building without consent and with intent to commit a crime therein,* and either:

. . .

(2) The burglary is committed by a person with a prior record of two or more convictions for burglary or housebreaking or a combination of both; or

---

2. The store manager testified that she noticed the cards were not in their usual place when she arrived at the scene; however, because the cards were useless until validated, she did not tell Godfrey they were missing.

(3) The entering or remaining occurs in the nighttime.[3]

There appear to be no published decisions from this State addressing the question of whether one who has remained after working hours in a business establishment and then commits a crime within the establishment can be charged with burglary if the initial entry was lawful. Nevertheless, there is ample authority to hold that, for the purpose of proving a burglary of a business establishment, an entry without consent should not be limited to those situations in which the prosecution shows the accused physically crossed the threshold of the building after the establishment had closed and the accused could no longer be considered an invitee.[4]

We hold the State presented sufficient evidence to have the jury determine whether or not an unlawful entry had taken place. Although Johnson may have initially "entered" the store when it was open to the public, he then concealed himself in the ceiling area of the building, where he remained after the store had closed. Without question, Johnson was no longer an invitee of Fast Phil's when he remained in the store after it had closed and committed other unlawful acts in the building.

**AFFIRMED.**

HEARN, C.J., and HUFF, J., concur.

---

**3.** S.C.Code Ann. § 16–11–312 (1985 and Supp.2000) (emphasis added). The indictment alleged Johnson "had two prior convictions for Burglary and Housebreaking, and the defendant did enter in the nighttime."

**4.** *See North Carolina v. Speller,* 44 N.C.App. 59, 259 S.E.2d 784, 785 (1979) (upholding a conviction for burglary notwithstanding that the defendant had entered the building during regular business, noting his "[g]oing into an area not open to the public and remaining hidden there past closing hours made the entry through the front door open for business unlawful"); 12A C.J.S. *Burglary* § 25, at 207 (1980) ("Exceeding an invitation given as a business invitee, and staying in a business building after the business is closed, in an area unopen to the public, renders the entry ab initio without consent within the meaning of a burglary statute, and constitutes a trespass for the purpose of a burglary charge.").